**SEQUA CORPORATION & AFFILIATES, Plaintiffs–Appellants,**

**v.**

**UNITED STATES of America, Defendant–Appellee,**

**Internal Revenue Service, Defendant.**

**Docket No. 04–5714 CV.**

United States Court of Appeals, Second Circuit.

Argued: Jan. 11, 2006.

Decided: Feb. 3, 2006.

Bryan C. Skarlatos, Kostelanetz & Fink, LLP, New York, NY, for Plaintiffs–Appellants.

Michael C. James, Assistant United States Attorney (David N. Kelley, United States Attorney for the Southern District of New York, Ramon E. Reyes, Jr., Assis-

---

tant United States Attorney, on the brief), Office of the United States Attorney for the Southern District of New York, New York, NY, for Defendant–Appellee.

Before: WINTER, CABRANES, and SACK, Circuit Judges.

PER CURIAM.

Plaintiffs Sequa Corp. & Affiliates ("Sequa") appeal from a September 20, 2004 Opinion and Order of the United States District Court for the Southern District of New York (Gerard E. Lynch, *Judge*) which denied plaintiffs' motion for summary judgment and, because the case presented a purely legal issue, dismissed Sequa's complaint against the United States seeking a disputed tax refund. *See Sequa Corp. v. United States,* 350 F.Supp.2d 447 (S.D.N.Y.2004).

The case concerned statutory interpretation—specifically, how the Internal Revenue Code ("IRC") applied to certain gains and losses of Sequa. The parties dispute whether a corporation's Alternative Minimum Tax Net Operating Losses ("AMT NOLs"), when "carried back" to years preceding the effective date of the corporate AMT (enacted in 1986 and effective Jan. 1, 1987), are offset to the extent of the corporation's regular taxable income in those years. The parties stipulated to the facts and agreed that the case turned on a purely legal issue; whoever convinced the District Court of its reading of the statute would win.[1]

In a comprehensive and thoughtful opinion, the District Court found that while the statutory text allowed multiple meanings, the plain meaning of the statute best correlated with the position of the Government, which accorded with both the overall purpose of the legislation (to ensure that money-making corporations pay at least some taxes) and the most persuasive contemporary secondary source (the "Blue Book" prepared by the Congressional Joint Committee on Taxation, which the District Court recognized does not provide formal legislative history but nonetheless found instructive). It therefore found that Sequa's NOLs, when carried back to 1986, must be offset by Sequa's regular taxable income from 1986 (as opposed to its AMT from 1986, which did not exist because the AMT took effect in 1987). Sequa is consequently unable to carry forward these NOLs to subsequent tax years, which prevents Sequa from qualifying for the tax refunds it desires.

We are persuaded by the reasoning of the insightful and careful opinion of the District Court and adopt it as our own, with one minor exception.

After crediting the government's proposed reading of IRC § 56(d)(1)(B)(ii) (1988), governing the carryback of AMT NOLs, the District Court states that the government's reading "leaves unclear the pre–1987 application of section 56(d)(1)(A), which reads 'the amount of such [AMT NOL] deduction shall not exceed 90 percent of the alternative minimum taxable income determined without regard to such deduction." *Sequa Corp.,* 350 F.Supp.2d at 452 (alteration in original). In the ensuing paragraph, the District Court appears to agree with Sequa that the plain language of Section 56(d)(1)(A) is susceptible to a reading under which "in any year prior to 1987, the AMT NOL deduction should be zero (that is, 90 percent of zero), thus freeing up the entirety of any AMT NOL to be used in post–1986 years." *Id.* The District Court then goes on to reject Sequa's proposed reading on the ground that the government's reading is more consistent with "Congress's broad purposes" in adopting the AMT. *Id.*

---

1. The provisions at issue appear at IRC § 172(b)(2) ("Amount of carrybacks and car-ryovers") and IRC § 56(d) ("Alternative tax net operating loss deduction defined.").

Apparently, the District Court assumes that Section 56(d)(1)(A), like Section 56(d)(1)(B)(ii), applies to the carryback of AMT NOLs; this is why the question of its "pre–1987 application arises." However, Section 56(d)(1)(A), by its terms, applies not to carrybacks, but deductions. Because Section 56 became effective in 1987, *see* Pub.L. No. 99–514, 100 Stat.2085, 2320–45 (1986), its provisions unambiguously apply only to years beginning with 1987, *see* 26 C.F.R. § 1.172–1(e)(3) ("The amount of the net operating loss deduction which shall be allowed for any taxable year shall be determined under the law applicable to that year."). Thus, the "pre–1987 application" of Section 56(d)(1)(A) is clear—there is none.

Our view on this matter only reinforces the District Court's conclusion that Sequa is not entitled to a tax refund.

Accordingly, the judgement of the District Court is hereby affirmed.